UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA            CaseNo.8:15-cr-409-VMC-JSS

v.

EDWIN HERNANDEZ
True full name:  Antonio Edwin Hernandez-Picado     ///

## DEFENDANT'S SENTENCING MEMORANDUM

**COMES NOW THE DEFENDANT, Antonio Edwin Hernandez-Picado**, by and

through his undersigned counsel, pursuant to 18 U.S.C. s.3553, and makes this his

Sentencing Memorandum, and respectfully says:

The Defendant files this Sentencing Memorandum in compliance with Local Rule 1.05

which allows, in pertinent part, quotations of three lines or more to be single spaced and

indented; and requires at least 12 point font, 1.25 inch top, bottom, and left margin, and

1-1.25 inch right margin. Local Rule 1.05.

**Safety Valve Discussion, PSR pg.21**

The Defendant pled to count one charging conspiracy to possess with intent to distribute

100 kg. or more of a mixture and substance containing a detectable amount of marijuana,

a schedule I controlled substance, on board a vessel subject to the jurisdiction of the

U.S.A, in violation of 46 USC ss.70503(a) and 70506(a) and (b); and 21 USC

s.960(b)(2)(G), Plea Agreement (Doc39) at p.1 of 20.  21 USC 960 is listed in USSG

s.5C1.2 (safety valve) while these title 46 sections are not.  In any event, the two level

reduction in USSG s.2D1.1(b)(16) applies even when the defendant is convicted under a

statute that is not in s.5C1.2, and regardless if he is subject to a statutory minimum

sentence, infra. See also 21 USC s.960.

"Although the safety valve itself applies only to certain offenses with statutory minimum sentences, the courts have held that the two level reduction in s.2D1.1(b)(16) applies even when the defendant is convicted under a statute that is not in s.5C1.2, and regardless of whether defendant is subject to a statutory minimum sentence. [fn.15 U.S. v. Osei, 107 F.3d 101 (2d Cir. 1997); U.S. v. Warnick, 287 F.3d 299 (4th Cir. 2002) (defendant convicted under 21 U.S.C. s.860 was eligible for two level reduction under s.2D1.1(b)(6), even though she would have been ineligible for relief from a mandatory minimum sentence); U.S. v. Mashek, 406 F.3d 1012 (8th Cir. 2005) (the reduction in s.2D1.1(b)(6) is not limited to those offense listed in the safety valve guideline); U.S. v. Mertlius, 111 F.3d 870 (11th Cir. 1997) (two level reduction under s.2D1.1(b)(4) applies even though defendant was convicted of 21 U.S.C. s.843(b) which has no statutory minimum sentence and is not listed in s.5C1.2).]. A 2002 amendment added Application Note 21 to s.2D1.1 clarifying this. [fn.16 Appendix C, Amendment 640, effective November 1, 2002 (adding Application Note 21).]." *Federal Sentencing Guidelines Handbook, Text and Analysis, 2015-2016 Edition*, Roger W. Haines, Jr, Frank O. Bowman, III, Jennifer C. Woll, Handbook, s.5C1.2, p.1484.

§5C1.2. Limitation on Applicability of Statutory Minimum Sentences in Certain Cases
(a) Except as provided in subsection (b), in the case of an offense under 21 U.S.C. § 841, § 844, § 846, § 960, or § 963, the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the court finds that the defendant meets the criteria in 18 U.S.C. § 3553(f)(1)-(5) set forth below:
(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines before application of subsection (b) of §4A1.3 (Departures Based on Inadequacy of Criminal History Category);
(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
(3) the offense did not result in death or serious bodily injury to any person;
(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and
(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the

information shall not preclude a determination by the court that the defendant has complied with this requirement.

A defendant has the burden of proof in Safety Valve cases by a preponderance of the evidence. *U.S. v. Matos*, 328 F.3d 34 (1st Cir. 2003); *U.S. v. Ajugwo*, 82 F.3d 925 (9th Cir. 1996). The Safety Valve is actually Mandatory if the Court finds the defendant meets all five criteria. *U.S. v. Leonard*, 157 F.3d 343 (5th Cir. 1998) (holding that the safety valve reduction is mandatory, not discretionary, but finding non plain error); *U.S. v. Myers*, 104 F.3d 76 (5th Cir. 1997)), and "survives Booker's holding the guidelines advisory" (*U.S. v. Cardenas-Juarez*, 469 F.3d 1331 (9th Cir. 2006); *U.S. v. Booker*, 543 U.S. 220 (2005)). Hence, the District Court must apply the "Safety Valve" Exception if the statutory requirements are met. *U.S. v. Quirante*, 486 F.3d 1273 (11th Cir. 2007) (holding that safety valve protection is not discretionary). Of course though, post Booker, because the guidelines are advisory, a court may "vary" upward to and even past the mandatory minimum after consideration of the factors in 18 USC s.3553(a). *U.S. v. Quirante*, 486 F.3d 1273 (11th Cir. 2007). A District Court's denial to grant "Safety Valve" protection is reviewable on appeal since it does not have discretion to refuse its application if qualified. *U.S. v. Cruz*, 106 F.3d 1553 (11th Cir. 1997). Therefore, a District Court ought to make sufficient findings in denying "Safety Valve" credit, permitting meaningful appellate review. *U.S. v. Reid*, 139 F.3d 1367 (11th Cir. 1998) (the District Court said only that it did "not feel the safety valve applies in this case"); *U.S. v. Smith*, 174 F.3d 52 (2d Cir. 1999). However, a defendant waives appellate review of "Safety Valve" issues by waiving appeal (*U.S. v. Difeaux*, 163 F.3d 725 (2d Cir. 1998)),

or by failing to raise the "Safety Valve" claim at sentencing. *U.S. v. Hoskins*, 173 F.3d 351 (6th Cir. 1999).

**Sentencing under Booker**

In *United States v. Booker*, 125 S. Ct. 738, 756 (2005), the Supreme Court, reaffirming its holding *Apprendi v. New Jersey*, 530 U.S. 466 (2000), concluded that the provisions of the Federal Sentencing Reform Act of 1984 were not to be applied as though they were mandatory, essentially making the guidelines advisory. Id. at 757. Therefore, instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as being revised by Booker: "[R]equires a sentencing court to consider Guidelines ranges, see U.S.C.A. 3553(a)(4)(Supp. 2004), but it permits the court to tailor the sentence in light of other statutory concerns, as well. See 3553(a)." *Booker*, 125 S. Ct. at 757. Therefore, under *Booker*, sentencing Courts must treat the sentencing guidelines as just one of a number of sentencing factors that are otherwise set forth in 18 USC 3553(a). The primary directive in 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2 of the section. 3553(a)(2) states that such purposes are:  (A) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) To afford adequate deterrence to criminal conduct; (C) To protect the public from further crimes of the defendant; and (D) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. In determining the minimally sufficient sentence, 3553(a) further directs sentencing courts to consider the following factors, inter alia: 1) The nature and circumstances of the

offense and the history and characteristics of the defendant; (3553(a)(1)); 2) The kinds of

sentences available; (3553(a)(3)); 3) The need to avoid unwarranted sentence disparities

among defendants with similar records who have been found guilty of similar conduct

(3553(a)(6)); and 4) The need to provide restitution to any victims of the offense.(

3553(a)(7)).

Additionally, other statutory sections also give the courts guidance in sentencing. For

example, 18 USC 3582 provides that the imposition of a term of imprisonment is subject

to the following limitation: "in determining whether and to what extent imprisonment is

appropriate based on the Section 3553(a) factors, the judge is required to recognize that

imprisonment is not an appropriate means of promoting correction and rehabilitation."

In accordance with 18 USC 3661, no limitation shall be placed on the information

concerning the background, character, and conduct of [the defendant] which a court of

the United States may receive and consider for the purpose of imposing an appropriate

sentence (emphasis added). This includes as relevant to sentencing a variety of factors

such as the defendants age, educational and vocational skills, mental and emotional

conditions, drug or alcohol dependence, and lack of guidance as a youth. *Please see*

USSG 5H1; also *United States v. Nellum*, 2005 WL 300073, 2005 U.S. Dist. LEXIS 1568

(N.D. Ind. Feb. 3, 2005) (Simon, J.) (taking into account fact that defendant, who was 57

at sentencing, would upon his release from prison have a very low likelihood of

recidivism since recidivism reduces with age; citing Report of the U.S. Sentencing

Commission, Measuring Recidivism: the Criminal History Computation of the Federal

Sentencing Guidelines, May 2004); *United States v. Naylor*, F. Supp. 2d , 2005 WL

525409, *2, 2005 U.S. Dist. LEXIS 3418 (W.D. Va. Mar. 7, 2005) (Jones, J.) (concluding

that sentence below career offender guideline range was reasonable in part because of

defendants youth when he committed his predicate offenses he was 17 and noting that in

*Roper v. Simmons*, 125 S. Ct. 1183, 1194-96 (2005), the Supreme Court found significant

differences in moral responsibility for crime between adults and juveniles).

The directives of *Booker* and 3553(a) make clear that uncritical application of the

guidelines is no longer permitted. *Please see United States v. Ameline*, 400 F.3d 646,

655-56 (9th Cir. Feb. 9, 2005) (advisory guideline range is only one of many factors that

a sentencing judge must consider in determining an appropriate individualized sentence),

rhg en banc granted, 401 F.3d 1007 (9th Cir. 2005). In sum, in every case, a sentencing

court must now consider all of the 3553(a) factors, not just the guidelines, in determining

a sentence that is sufficient but not greater than necessary to meet the goals of sentencing;

and where the guidelines conflict with other sentencing factors set forth in 3553(a), these

statutory sentencing factors should generally trump the guidelines. *Please see United*

*States v. Denardi*, 892 F.2d 269, 276-77 (3d Cir. 1989) (Becker, J, concurring in part,

dissenting in part) (arguing that since 3553(a) requires sentence be no greater than

necessary to meet four purposes of sentencing, imposition of sentence greater than

necessary to meet those purposes violates statute and is reversible, even if within

guideline range).

**Discussion of the Guidelines in *Gall***

The Sentencing Guidelines were again discussed by the Court in *Gall v. United States*,

128 S Ct. 586 (2007). In *Gall*, the Court set forth a number of important principles. First,

the Court made clear that the sentencing guidelines are advisory and that appellate review

is limited to the issue of "reasonableness."

"As a result of our decision [in Booker], the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." Our explanation of "reasonableness" review in the Booker opinion made it pellucidly clear that the familiar abuse of discretion standard of review now applies to appellate review of sentencing decisions. See 543 U.S., at 260-262, 125 S.Ct. 738; see also Rita, 551 U.S., at ___, 127 S.Ct. 2456 (STEVENS, J., concurring)." _Gall_, 128 S.Ct. at 594.

Second, the sentencing judge must explain its reasons for departing from the guidelines:

> "It is also clear that a district court judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or unusually harsh sentence is appropriate in a particular case without sufficient justification." Id.

Third, the opinion placed certain restrictions to the extent of appellate review of a

sentence outside the advisory guideline range, and specifically disapproved of certain

criteria that had been utilized in _Booker_:

> "In reviewing the reasonableness of a sentence outside the guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines. We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside of the Guidelines range. We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justification required for a specific sentence." _Gall_, 128 S.Ct. at 594-595.

Fourth, while the Court had permitted the circuit courts to adopt a presumption of

reasonableness for sentences within the guidelines range, it did not follow that these

courts could adopt a presumption of unreasonableness for sentences outside the range:

> "As an initial matter, the approaches we reject come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range. See id., at ___, 127 S.Ct., at 2467 ("The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that

courts may adopt a presumption of unreasonableness").[fn3] Even the Government has acknowledged that such a presumption would not be consistent with Booker. See Brief for United States in Rita v. United States,O.T.2006, No. 06-5754, pp. 34-35." *Gall*, 128 S.Ct. at 595.

Finally, the Court gave its reasons for its rejection of the "mathematical approach":

"The mathematical approach also suffers from infirmities of application. On one side of the equation, deviations from the Guidelines range will always appear more extreme — in percentage terms — when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years. Moreover, quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation. App. 95.

We recognize that custodial sentences are qualitatively more severe than probationary sentences of equivalent terms. Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. See United States v. Knights, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497 (2001) ("Inherent in the very nature of probation is that probationers `do not enjoy the absolute liberty to which every citizen is entitled'" (quoting Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))).[fn4] Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer. App. 109.

On the other side of the equation, the mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction? Does it matter that the withdrawal occurred several years ago? Is it relevant that the withdrawal was motivated by a decision to discontinue the use of drugs and to lead a better life? What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him? The formula is a classic example of attempting to measure an inventory of apples by counting oranges.[fn5]
Most importantly, both the exceptional circumstances requirement and the rigid mathematical formulation reflect a practice — common among courts that have

adopted "proportional review" — of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions — whether inside or outside the Guidelines range." *Gall*, 128 S.Ct. 595-596.

With its decision in *Gall*, the Supreme Court laid to rest any argument whatsoever that trial judges are required to impose sentences within the sentencing guidelines range. Sentencing Guidelines are merely advisory. Courts are to impose reasonable sentences consistent with the principles set forth in the sentencing guidelines. And appellate Courts are to review sentences using a reasonableness standard.

**Application of the Statutory Sentencing Factors to the Facts of this Case**

In the instant case, the following factors are respectfully submitted to this Honorable Court in helping it in determining what "type and length of sentence is sufficient, but not greater than necessary", to satisfy the purposes of sentencing, and in reaching a "reasonable sentence".

**REASONS TO VARY DOWNWARD**

**I. Personal Mitigation Factors, 18 USC 3553**

The Defendant is a Nicaraguan 44 year old family man (DOB 5/4/71) whom comes from a background of extreme poverty, is a hard working blue collar fisherman and farmer, has 10 dependents (infra), and a third grade primary school education (PSR p.3, pg.49). He can read and write in Spanish, and speaks a little English, PSR pg.47. He left Nicaragua with two friends to attempt to make money laboring in Costa Rica. He was attempting to provide a better life for his children and intimate family, and for the children of his deceased sister; earn and save some money up; buy some tools or a motor for improved

fishing and farming; and return to Nicaragua, PSR pg.40.  Once in Costa Rica, the

Defendant made the biggest mistake of his life when he agreed to participate in bringing

marijuana back to Costa Rica from Jamaica.  The Defendant was one of two kids born to

Catalina Picado, his mom, and Rolando Hernandez, his dad.  He never knew his dad,

until right before his dad died, about 7 years ago, PSR pg.37.  He had three half siblings

on his mother's side:  Sheyla Martinez (30); Rene Picado (36); and Leida Martinez who

died about three years ago, PSR pg.37.  Defendant's grew up in extreme poverty, being

raised by a single mom on a farm in Blue Fields, Nicaragua, PSR p.3, pg.38.  His single

mom worked, struggling to support the family, and Defendant started working at the age

of 13 to help out, PSR pg.38.  The Defendant has been in a common law marriage for an

impressive 25 years with Gloria Sambola (44), and they have 5 children together (23, 21,

19, 17, 16), PSR pg.39.  Those 5 children live with Ms. Sambola and Defendant also has

two children from two distinct other women (17 whom lives with her mother and an

infant whom lives with her mother), PSR pg.39.

Defendant notes that Sheyla Martinez is the sister whom is watching the children of the

deceased sister, 4 total children of Leida Martinez, whom died and the Defendant and

other siblings help support the 4 children whom are in Sheyla's care.  The Defendant

supports his household of his five children and wife, and he and his siblings all help

support his deceased sister Leida's four children whom are being taken care of by his

sister Sheyla, PSR pg.38-39.  The Defendant also has 7 grandchildren in Nicaragua that

he misses, and whom miss him.  He is respectfully requesting this Court recommend a

prison where he can study English and earn a diploma or certificate in computers "so he can be a better man for his family and country" (impressive aspirations and motives).

## II. The impact on the Defendant's Family: a reason to Adjust Downward

The harsh effect incarceration can have on innocent family members is a factor courts can consider under s.3553(a), *Defending a Federal Criminal Case, 2010 Edition,* Federal Defenders of San Diego, Inc. ("Federal Defender") at p.17-864, section 17.05.18.01, citing to various cases: *United States v. Antonakopoulos*, 399 F.3d 68 (1st Cir. 2005) (on remand of bank fraud case, district court may consider defendant's role as caretaker for brain-damaged son even though alternative means of care existed); *United States v. Taylor, 280 Fed. App'x 397 (5th Cir. 2008) (unpublished)* (60 month prison term for trading child pornography was not plain error, despite a guideline sentence of 120 months, based on defendant's lack of a prior record, his youth, and impressive employment history, supportive testimony of his wife, mother, and stepfather, and the needs of his newborn son); *United States v. Dominguez*, 296 F.3d 192 (3d Cir. 2002) (district court erred in concluding it could not depart four levels in bank fraud case for defendant who resided with elderly parents, who were physically and financially dependent on her); *United States v. Prisel*, 316 Fed. App'x 377 (6th Cir. 2008) (unpublished) (sentence of one day in prison plus three years supervised release for possessing child pornography upheld despite guideline range of 27-33 months, where defendant worked from home, and had a dependent wife with whom he had a mortgage for which they jointly owed over $70,000); *United States v. Owens*, 145 F.3d 923 (7th Cir. 1998) (departure from 169 to 120 months under s.5H1.6 for defendant who

maintained good relationship with his children and court believed his active role raising and supporting his family was atypical for crack dealer and imprisonment may have forced wife on public-assistance and defendant also spent time with brother with Downs Syndrome); *United States v. Lehmann*, 513 F.3d 805 (8th Cir. Jan. 17, 2008) (sentence of probation affirmed where justified by the atypical nature and circumstances of the felon in possession case and by the defendant's need to care for her nine-year-old developmentally-disabled son); *United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005) (in $500,000 embezzlement case, no abuse of discretion to depart 8 levels to probation in part because defendant's care for daughter, which was unusual compared to other single parents); *United States v. Leon*, 341 F.3d 928 (9th Cir. 2003) (departure granted for defendant who was sole care giver of suicidal wife who also suffered from renal failure); *United States v. Aguirre*, 214 F.3d 1122 (9th Cir. 2000) (district court had discretion to depart downward 4 levels for extraordinary family circumstance that defendant's 8-year old son had lost his father and would be losing his mother for substantial amount of time); *United States v. Garcia-Salas*, 260 Fed. App'x 27 (10th Cir. 2007) (unpublished) (sentence at bottom-end of guideline range reversed and remanded for resentencing because it is clear 10th Circuit precedent had effectively foreclosed variances and post-Gall and Kimbrough, district court had greater sentencing discretion than it thought it did; defendant argued for a lower sentence for his extraordinary physical impairment, vulnerability in prison, extraordinary family circumstances, and mental and emotion condition); *United States v. Gauvin*, 173 F.3d 798 (10th Cir. 1999) (3-level departure to make defendant eligible for shock incarceration was warranted under

s.5H1.6 to minimize impact on children where defendant supported 4 young children, his wife worked 14 hour days, miles from home, was barely able to provide for children and risked losing custody of her children and her job, and no extended family could take custody of them); *United States v. Davis*, 2008 WL 2329290 (S.D.N.Y. June 5, 2008) (court imposed time-served on a first time offender whose devotion to the education of the six children of his 15 year marriage—even while the family lived in a homeless shelter – was attested to by a school teacher and a pediatrician, and by his wife's views that her children would be traumatized by his separation from them, and the judge believed incarceration would deny the children the "care and guidance clearly needed at this point in their lives"); *United States v. Crawford*, 2007 WL 2436746 (E.D. Wis. Aug. 22, 2007) (district court granted variance for defendant's family situation with five children and the impact incarceration would have on the children); *United States v. Boeka*, 2006 WL 3780400 (D. Neb. Dec. 20, 2006) (court imposed 12 months and one-day for bank robbery in which Cheez-Its were disguised as a bomb, and government did not oppose departing based on extraordinary family circumstances where defendant provided primary care for disabled 11-year-old who required constant help and defendant suffered from major depression and may have been considering suicide by police); *United States v. Bortnick*, 2006 WL 680544 (E.D. Pa. March 15, 2006) (unpublished.) (in $8 million fraud case for which Guidelines advised 51-63 months, court imposed $1 million fine and seven day sentence in part because defendant's son born with severe handicap needed attention and financial support and taking non-violent defendant with no criminal history out of family environment for protracted time would serve no social or

penal purpose); *United States v. Bailey*, 369 F. Supp. 2d 1090 (D. Neb. 2005) (post-Booker departure from 24-27 months probation for defendant convicted of possessing child pornography justified by expert testimony showing his presence was critical to his own child's recovery from molestation by a boyfriend of the child's mother, and there was reasonable expert assurance that defendant was not dangerous to the public (including children), and the benefit to the public of incarcerating Bailey was outweighed by the harm it would cause to his daughter); *United States v. Manasrah*, 347 F. Supp. 2d 634 (E.D. Wis. 2004) (judge departs two levels to probation with home detention for immigrant from West Bank, convicted of mail fraud where husband threatened to take the children back to the West Bank and to not let defendant see them again if wife incarcerated, a harm "far worse than those faced by a defendant-parent and her children in the usual case"); *United States v. Mateo*, 299 F. Supp. 2d 201 (S.D.N.Y. 2004) (downward departure granted in heroin case where defendant's two young children were thrust into the care of relatives who reported extreme difficulties raising them, and both fathers were absent); *United States v. Colp*, 249 F. Supp. 2d 740 (E.D. Va. 2003) (departure from 10 months to probation granted in tax evasion case because defendant was sole caretaker for husband disabled by brain injury); *United States v. Lopez*, 28 F. Supp. 2d 953 (E.D. Pa. 1998) (six-level departure granted for defendant who pled guilty to conspiracy to distribute heroin where defendant's mentally ill seven-year-old attempted suicide after defendant's arrest and defendant's parental rights would be terminated under full range of incarceration, and defendant was not involved in large-scale drug dealing).

**III. Personal Cost to Defendant and his family; Cost to Society of Lengthy Incarceration (sufficient but not greater than necessary)**

The PSR Pg. 61 states it costs $30,621.00 per year to incarcerate offenders. This means, for example, that the cost of 5 years min/man prison is $153,105. The Defendant is 44 years old and a sentence of 5 years is very substantial and is more than sufficient to meet the goals of sentencing.  It is respectfully submitted that more than 5 years would be greater than necessary.  It is respectfully submitted that the bottom of the USSG or lower would be sufficient, and any more would be greater than necessary, were the 5 year min/man avoidable.  More specifically, with a total offense level of 23 PSR pg.29, and a criminal history category of I PSR pg.32, the USSG recommend a 46-57 months sentence PSR pg.52. In any event, instead of providing for his family in Nicaragua, any continued time of incarceration (whether over the 46 months bottom of the USSG or over the 5 year min/man) will cost over $30,000/year to be housed, fed, and clothed, while in prison in the U.S.

Defendants ought to be sentenced to enough incarceration to satisfy "sufficient[ly]" the goals of punishment in sentencing factors and commission policy, while avoiding any "greater than necessary" expense and punishing sentence. A sentence which exceeds one that is sufficient, will be "unreasonable" and "unfair".  _U.S. v. Fernandez_, 436 F.Supp. 2d 983 (E.D. Wis. 2006) (According to the _Federal Defender_, the Court in _U.S. v. Fernandez_, 436 F.Supp. 2d 983 (E.D. Wis. 2006) imposed a 126 months sentence because the career offender guideline range of 188-235 months, was greater than

necessary to satisfy sentencing purposes, in part due to Sentencing Commission study on

unfairness of career offender designation, *Federal Defender*, at p.17-847. Vol.II.

**The Personal and Economic Cost of Incarceration: a reason to Adjust Downward**

The *Federal Defender* lists the following cases with the following tenets:

*United States v. Chavez*, 230 F.3d 1089 (8th Cir. 2000) (Bright, J., concurring) (sentence

will probably cost taxpayers $836,000, and the defendant his life.  Guidelines range for

nonviolent offenders drains billions from taxpayers and keeps potentially productive

members of society locked up, causing staggering "opportunity costs"); *United States v.*

*Angelos*, 345 F. Supp. 2d 1227 (D. Utah 20040 (cost of mandatory 61-year-sentence runs

to $1,265,000, money that could otherwise be spent on other law enforcement or social

programs to reduce crime); *United States v. Hughes*, 825 F. Supp. 866 (D. Minn. 1993)

(court noting that "the non-rehabilitation purposes of incarceration – retribution,

deterrence and incapacitation – would all be more than adequately served by a far shorter

sentence.  Both society and the defendant will pay a dear cost for this sentence and

receive very little in return.").  *Federal Defender* at pp. 17-866-867.

**IV. Prison has greater significance/impact for this first time offender**

S.3553(a)(2)(A) states in part, a sentence is meant "to provide just punishment for the

offense" while S.3553(a)(2)(B) states one reason upon which to fashion a sentence, is "to

afford adequate deterrence to criminal conduct".

Defendant is 44 and has no prior record. The *Federal Defender* at s.17.05.15 cites:

*United States v. Baker*, 445 F.3d 987 (7th Cir. 2006) (affirming variance of 78 months

from 108 months for defendant convicted of distributing child pornography, justified in

part by judge's finding that prison would mean more to this defendant than one who has been imprisoned before, which resonated with goal of "just punishment" in s.3553(a)(2)(A) and "adequate deterrence" in Section 3553(a)(2)(B)); *United States v. Paul*, 239 F. Appx 353 (9th Cir. 2007) (defendant's 16-month sentence, the top end of the guideline range for unlawful receipt of federal funding, was unreasonably high because defendant was a first-time offender, returned the funds, and displayed remorse); *United States v. Weidner*, 209 F. Appx 826 (10th Cir. 2006) (affirming variance from advisory range of 78-97 months to 60 month sentence for two counts of false bank entry considering defendant's loss of law license due to conviction and judgment that this sentence provided adequate deterrence); *United States v. Jewell,* 2009 WL 1010877 (E.D. Ark. April 15, 2009) (defendant sentenced to 30 months in prison for aiding and abetting tax evasion, because guideline range near the statutory maximum of 5 years was inappropriate for first time offender); *United States v. Cull*, 446 F. Supp. 2d 961 (E.D. Wis. 2006) (non-guideline sentence of 2 months in jail and 4 months home confinement, where advisory range was 10-14 months for marijuana offense by defendant who had never been confined, was sufficient to impress on him the seriousness of his crime and deter him from reoffending); *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not been subject to prior lengthy incarceration).

**V. "Post-Booker courts have noted that recidivism is markedly lower for older defendants."** *United States v. Lucania*, 379 F.Supp. 2d 288, 297 (E.D.N.Y. 2005); "Under the Guidelines, age was not normally relevant to sentencing. S. 5H1.1. Post-

Booker, however, at least one Court noted recidivism drops substantially with age",

*Simon v. United States*, 361 F.Supp. 2d 35 (E.D.N.Y. 2005); BOTH quoted in *Federal*

*Defender* s.17-905.  "Recidivism rates decline relatively consistently as age increases"

(*Federal Defender* s.17-905 quoting Measuring Recidivism: The Criminal History

Computation of the Federal Sentencing Guidelines, at 12, 28 (2004); available at

www.ussc.gov/publicat/Recidivism_General.pdf )


**WHEREFORE, the Defendant, Antonio Edwin Hernandez-Picado**, by and through

his undersigned counsel, has made this his sentencing memorandum.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing has been furnished to THE U.S.
ATTORNEY'S OFFICE, VIA ELECTRONIC FILING, on Tuesday February 16, 2016.

 **Respectfully submitted,**

*|S| Jorge León Chalela*

**JORGE LEÓN CHALELA, ESQ.**
**Jorge León Chalela, P.A.**
P.O. BOX 173407
Tampa, Florida 33672-0407
 Office: (813) 221-5600
Cell Phone: (727) 415-4286
Fax: (813) 350-7801
**E-Mail: chalelalaw@yahoo.com**
Florida Bar Number: 0073245
Attorney for Defendant, Antonio Edwin Hernandez-Picado